Filed 6/24/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>WILLIE EUGENE BRADLEY, IV, et al.,<br><br>    Defendants and Appellants. | A159105, A159107<br><br>(Solano County<br> Super. Ct. Nos. VCR224655,<br>VCR224656) |

Defendants Willie Eugene Bradley, IV, and Melvin Delarence Mason participated in an attempted robbery, during which one of the robbery victims was shot and killed. A jury convicted defendants of first degree felony murder. On appeal, defendants contend the evidence was insufficient to establish they acted with the "reckless indifference to human life" required for felony murder pursuant to Penal Code section 189, subdivision (e)(3). They further assert the trial court erred by failing to instruct on robbery as a lesser included offense to felony murder. We disagree and affirm the judgment.

## I. BACKGROUND

Defendants and at least one other individual, Daniel Glass, attempted to rob L.V. and her cousin, Robby Poblete, while they were waiting in their vehicle to purchase marijuana. During the course of that robbery, Poblete was shot and killed.

Defendants were initially charged by information with murder (Pen. Code,[1] § 187, subd. (a); count 1) and attempted second degree robbery (§§ 664, 211; count 2). Defendant Mason also was charged by information with assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 3). The information alleged felony-murder special circumstance allegations (§ 190.2, subd. (a)(17)) and personal gun use allegations (§§ 12022.5, subd. (a); 12022.53, subd. (b)). While Glass was charged in the initial felony complaint, he reached a plea deal with the prosecution and was not charged in the information.[2]

During defendants' initial trial, the California Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder. (*People v. Cooper* (2020) 54 Cal.App.5th 106, 113, review granted Nov. 10, 2020, S264684.) The bill, in relevant part, amended section 189 to provide that a defendant who was not the actual killer and did not have an intent to kill is not liable for felony murder unless he or she "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).)

In part due to anticipation of Senate Bill 1437, the district attorney filed an amended information recharging defendants with murder, but removing all reference to the attempted robbery. After passage of Senate Bill 1437, defendants moved for mistrial because "the trial related proceedings to

---

[1] All statutory references are to the Penal Code.

[2] The information also charged a third person, James Anthony Gover, with the murder. He is not a party to this appeal.

2

date have proceeded on the basis of a 'felony-murder' rule that is no longer valid." The court granted defendants' motion for mistrial.

Glass testified at trial against defendants. On the day of the shooting, Glass testified, he saw defendants while stopped at a gas station. Glass and defendants were on friendly terms and would "chill" together. Glass asked defendants if they wanted to ride with him, and they agreed. While driving, Glass received a call on his cell phone from Gover. Gover asked Glass if he was interested in robbing someone for money. Glass put his phone on speaker and asked for more details. Gover informed them a man and woman would be in a truck at a Howard Johnson Inn, and they may be able to steal approximately $18,000. Both defendants indicated to Glass they wanted to proceed with the robbery, and Glass drove toward the Howard Johnson Inn. He parked in the Grocery Outlet parking lot, which is adjacent to the Howard Johnson Inn. All three individuals had firearms.

Defendants and Glass did not discuss the robbery until they arrived at the hotel. Upon arriving, Glass testified, defendant Bradley told him to go to the passenger side door, and defendants would go to the driver's side door. As Glass and defendants walked through the hotel, Glass separated from defendants. Glass testified he walked past the truck, lingered by an open conference room door, and then walked to the passenger side of the truck. Glass stated he saw defendants walking toward the truck, and he asked L.V., who was sitting in the passenger seat of the truck, for a lighter. Glass testified he then pulled out his gun and pointed it at L.V.'s chest and face. She screamed, and he told her to be quiet and not look at him.

Glass testified defendants had, by then, approached the driver's side door with their guns drawn. They repeatedly instructed Poblete to raise his hands, but he only raised one hand. Glass observed Poblete moving his right

3

hand around by his lap. Glass then saw Poblete standing outside the truck with the door open and heard subsequent gunshots. After hearing the gunshots, Glass testified he crouched down and ran back to his vehicle. He saw defendants running in front of him. When a man attempted to stop them, defendant Mason shoved the man out of the way, and they continued to Glass's vehicle and left the scene. When Glass asked defendants what had happened, defendant Bradley replied that Poblete "had a gun."

L.V. also testified regarding the attempted robbery. She stated Poblete encouraged her to purchase marijuana from his "really good friend" because the friend could offer a better price than a dispensary. L.V. agreed, and they drove to and parked in the Howard Johnson Inn parking lot facing the swimming pool. After they parked, Poblete removed his gun from the center console of his vehicle and placed it under his thigh. Approximately 20 minutes later, L.V. noticed a group of young men in the parking lot. She believed it was either four or five individuals.[3] One of the men approached her side of the vehicle and asked if she had a lighter. She testified that when she responded affirmatively, he called over the other men. L.V. stated the first individual then put a gun to her chest and stated, "Don't fucking move." She testified she looked down and did not move apart from glancing slightly toward Poblete. She also believed another individual approached her side of the vehicle from behind, outside of her line of vision, and pointed a gun at her head.

L.V. testified she saw Poblete attempting to grab his gun. At that same time, at least two men approached the driver's side of the vehicle. Because

---

[3] Surveillance video from the hotel only shows defendants with Glass. Police were unable to locate any video evidence indicating there were additional accomplices.

she did not move after the gun was pointed at her, L.V. was unsure of how the individuals approached the driver's side but believed they went around the back of the truck. She testified those individuals then opened the driver's side door while yelling at Poblete and holding guns. She stated they started dragging Poblete out of the truck, someone yelled "[s]top, stop," and shortly thereafter she heard three gunshots. The men then fled from the scene. She called 911.

Officers responded to L.V.'s 911 call and found Poblete on the ground suffering gunshot wounds. To the left of Poblete's left hand, officers located a small handgun. Police were able to identify Glass and defendants from surveillance video from the hotel. However, no surveillance video captured the actual shooting.

A jury convicted defendants of felony murder and found defendant Mason guilty of assault by means likely to produce great bodily injury. The court sentenced defendants to 25 years to life. It also imposed an additional eight years on defendant Mason for his assault conviction and the great bodily injury enhancement. Defendants timely appealed.

## II. DISCUSSION

### A. *Sufficiency of the Evidence for Felony-murder Conviction*

The prosecution did not attempt to prove either defendant was the actual killer. Accordingly, defendants first argue the prosecution was required to show they acted with reckless indifference to human life to support a felony-murder conviction.[4] They contend insufficient evidence supports such a finding. We disagree.

---

[4] Defendants do not dispute they were major participants in the attempted robbery.

5

### 1. *Standard of Review*

"In evaluating a claim regarding the sufficiency of the evidence, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 712.)  " 'To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

" 'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence.' [Citations.]  'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also be reasonably reconciled with a contrary finding.' " (*People v. Westerfield, supra,* 6 Cal.5th at pp. 712–713.)

### 2. *The* Tison-Enmund[5] *Continuum*

The law governing liability for felony murder is crafted by both U.S. Supreme Court and California Supreme Court precedent.  This court recently summarized the contours of the relevant law in *In re Taylor* (2019) 34 Cal.App.5th 543 (*Taylor*): "Beginning with the principle that 'in capital cases above all, punishment must accord with individual culpability,' [*People v.*] *Banks* explained that the death penalty cannot be imposed based solely on a defendant's 'vicarious responsibility for the underlying crime.'  ([*People v.*]

---

[5] *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*); *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*).

6

*Banks* [(2015)] 61 Cal.4th [788,] 801.)  Rather, to be sentenced to death, a defendant must, compared to 'an ordinary aider and abettor to an ordinary felony murder,' have both a more culpable mind state—reckless indifference to the risk of death—and more substantial involvement—as a major participant.  (*Id*. at pp. 801–802.)  Because the United States Supreme Court had 'found it unnecessary to "precisely delineate the particular types of conduct and states of mind warranting imposition of the death penalty," ' *Banks* concluded that 'a jury presented with this question must consider the totality of the circumstances.'  (*Banks*, at p. 802, quoting *Tison v. Arizona*, *supra*, 481 U.S. at p. 158 (*Tison*).)  Accordingly, *Banks* closely examined the facts in *Enmund* and *Tison* '[t]o gain a deeper understanding of the governing test and offer further guidance.'  (*Banks*, at p. 801.)

"In *Enmund*, the defendant learned that a man 'was in the habit of carrying large sums of cash on his person.  A few weeks later, [the defendant] drove two armed confederates to [the man's] house and waited nearby while they entered.  When [the man's] wife appeared with a gun, the confederates shot and killed [the couple].  [The defendant] thereafter drove his confederates away from the scene and helped dispose of the murder weapons, which were never found.'  ([*People v*.] *Banks*, *supra*, 61 Cal.4th at p. 799.)  The United States Supreme Court reversed the death sentence, concluding that the Eighth Amendment barred such punishment 'for any felony-murder aider and abettor "who does not himself [or herself] kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." '  (*Banks*, at p. 799.)

"In *Tison*, the defendants 'helped plan and carry out the escape of two convicted murderers from prison,' one of whom had killed a guard during a previous escape.  ([*People v*.] *Banks*, *supra*, 61 Cal.4th at p. 802.)  'This

entailed [the defendants'] bringing a cache of weapons to prison, arming both murderers, and holding at gunpoint guards and visitors alike' (*Ibid*.) During the escape, the defendants robbed and held at gunpoint an innocent family 'while the two murderers deliberated whether the family should live or die' and the defendants 'then stood by' while the murderers shot all four family members. (*Ibid*.) The United States Supreme Court affirmed the death sentences, holding that ' "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." ' (*Id*. at p. 800.)

"Comparing the facts in *Enmund* with those in *Tison*, [*People v.*] *Banks* derived a nonexclusive list of factors bearing on whether an aider and abettor of felony murder was a 'major participant' under section 190.2[, subdivision] (d):[6] ' "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" ' ([*People v.*] *Clark*[ (2016)] 63 Cal.4th [522,] 611, quoting [*People v.*] *Banks*, *supra*, 61 Cal.4th at p. 803.)

"Applying these factors, *Banks* held there was insufficient evidence that the defendant in the case before it was a major participant in the

---

[6] Senate Bill 1437, which amended the definition of felony murder, incorporated the definitions of "a major participant" and "reckless indifference to human life" from section 190.2, subdivision (d). (See § 189, subd. (e); *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080.)

8

underlying robbery.  ([*People v.*] *Banks*, *supra*, 61 Cal.4th at p. 805.)  The evidence showed that the defendant had 'dropped his confederates off near [a marijuana] dispensary' and 'waited three blocks away for approximately 45 minutes.'  (*Id.* at pp. 795, 805.)  After a security guard attempted to stop the robbers, all of whom were armed, one of them shot and killed him.  (*Id.* at p. 795.)  The defendant then headed toward the dispensary, picked up the other two nonshooters, and drove them away.  (*Id.* at pp. 795–796, 805.)  Our state Supreme Court concluded that the defendant was 'at the *Enmund* pole of the *Tison-Enmund* spectrum,' as there was no evidence that he planned the robbery or procured weapons, knew the shooter had previously committed a violent crime, or was present at the scene or even aware that a shooting had occurred.  (*Id.* at p. 805.)  The court also concluded that the defendant had not exhibited reckless indifference to human life, emphasizing that a defendant's knowing participation in an armed robbery and subjective awareness of 'the risk of death inherent in [that crime]' does not suffice.  (*Id.* at pp. 807–808.)  Rather, a defendant must appreciate that his or her 'own actions would involve a grave risk of death.'  (*Id.* at p. 807.)

"*Clark* expounded on the meaning of the 'reckless indifference to human life' element of a special circumstance under section 190.2[, subdivision] (d), which ' "significantly overlap[s]" ' with the 'major participant' element.  ([*People v.*] *Clark*, *supra*, 63 Cal.4th at pp. 614–615; see [*In re*] *Bennett* [(2018)] 26 Cal.App.5th [1002,] 1015.)  *Clark* explained that the mind state 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his [or her] actions.'  (*Clark*, at pp. 616–617.)  The required intent has 'both subjective and objective elements.  The subjective element is the defendant's conscious disregard of risks known to

him or her.  But recklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by . . . what "a law-abiding person would observe in the actor's situation." ' (*Id*. at p. 617.)  As [*People v.*] *Banks* did as to the 'major participant' element, *Clark* provided a nonexclusive list of factors bearing on the 'reckless indifference to human life' element.  (*Clark*, at p. 618.)  These factors are the 'defendant's knowledge of weapons used in the crime, and their actual use and number; [the] defendant's proximity to the crime and opportunity to stop the killing or aid [the victim or victims]; the duration of the crime; [the] defendant's knowledge of [the actual killer's] propensity to kill; and [the] defendant's efforts to minimize the possibility of violence during the crime.' ([*In re*] *Miller*[ (2017)] 14 Cal.App.5th [960,] 975; see *Clark*, at pp. 618–621.)

"Applying these factors to the facts, *Clark* concluded there was insufficient evidence that the defendant had acted with reckless indifference to human life.  ([*People v.*] *Clark*, *supra*, 63 Cal.4th at p. 623.)  As summarized by a later decision, the *Clark* defendant ' "was the mastermind who planned and organized [an] attempted robbery [of a computer store] and who was orchestrating the events at the scene of the crime."  [Citation.] During the robbery, one of [the defendant's] accomplices . . . shot and killed the mother of a store employee who arrived at the store to pick up her son. At the time of the shooting, [the defendant] was not at the store, but he drove to the location shortly thereafter and fled when he saw a woman lying on the ground, the police approaching, and [the shooter] fleeing the scene.' ([*In re*] *Bennett*, *supra*, 26 Cal.App.5th at pp. 1014–1015, quoting *Clark*, at p. 612.) Despite the evidence of the defendant's significant involvement in planning the robbery, there was also evidence that he 'planned the crime with an eye

10

to minimizing the possibilities for violence,' because it was timed for after the store closed and there were not supposed to be bullets in the gun. (*Clark*, at pp. 621–623.) The court concluded that the special circumstance had to be vacated since 'nothing in the plan . . . elevated the risk to human life beyond those risks inherent in any armed robbery.' (*Id*. at p. 622.)" (*Taylor*, *supra*, 34 Cal.App.5th at pp. 551–554.)

In *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*), the California Supreme Court again reiterated the *Clark*[7] factors. As recently summarized by Division Five, in *Scoggins*, "the defendant believed he had been swindled by the victim and sought revenge by planning an unarmed beating, to be committed by several of the defendant's friends—who would also get the defendant's money back. Once the plan was set in motion, however, one of the defendant's friends pulled out a gun and shot the victim. The defendant had not been present because he feared the victim would recognize him. Instead, the defendant waited at a nearby gas station, where his view of the crime scene was blocked. He arrived at the scene after the shooting, checked to see if the victim was breathing, and cooperated with police." (*In re McDowell* (2020) 55 Cal.App.5th 999, 1010, citing *Scoggins*, at pp. 671–672, 678–679.) In assessing whether the defendant acted with reckless indifference, the *Scoggins* court reaffirmed the *Clark* factors and explained determining culpability "requires a fact-intensive, individualized inquiry." (*Scoggins*, at pp. 677, 683.) The court concluded the defendant had not acted with reckless indifference, noting the defendant was not present during the incident, his plan did not involve the use of weapons, the duration of the interaction was brief, the record was devoid of evidence suggesting the defendant knew his friends were likely to use lethal force, and the defendant

---

[7] *People v. Clark*, *supra*, 63 Cal.4th 522 (*Clark*).

took steps to minimize the risk of injury by planning a public unarmed assault. (*Id.* at pp. 671, 680–681, 683.)

### 3. *Analysis*

Defendants argue insufficient evidence demonstrates they acted with reckless indifference to human life during the attempted robbery. In assessing the *Clark* factors, certain considerations weigh for and against a finding that defendants acted with reckless indifference to human life. However, " ' "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*Scoggins*, *supra*, 9 Cal.5th at p. 677.)

To begin, we note "[t]he intent to commit an armed robbery" or "[t]he mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life." (*People v. Banks*, *supra*, 61 Cal.4th at p. 799 (*Banks*); *Clark*, *supra*, 63 Cal.4th at p. 618.) However, *Clark* acknowledged the presence of a gun is a factor to be considered, and "[a] defendant's *use* of a firearm, even if the defendant does not kill the victim . . . , can be significant to the analysis of reckless indifference to human life." (*Clark*, at p. 618.) Here, defendants were not merely aware an accomplice was carrying a gun or that a gun would be involved in the robbery. (See, e.g., *id.* at pp. 619–622 [the defendant did not use a gun and did not know any loaded guns would be used in the robbery].) Rather, defendants themselves possessed and used firearms during the robbery. Both Glass and L.V. testified all of the individuals involved in the robbery were wielding firearms.

Defendant Bradley argues the evidence does not indicate he actually expected to use his firearm.[8] But that is not a component of the first inquiry.

---

[8] Defendant Mason does not argue this factor and concedes "that all the participants had guns."

Rather, the factor assesses "defendant's knowledge of weapons used in the crime, and their actual use and number." (*In re Miller*, *supra*, 14 Cal.App.5th at p. 975.) Here, it is undisputed that defendants were aware they all had firearms and used them during the attempted robbery.

Other factors supporting a finding of a reckless indifference to human life include defendants' physical presence at the scene and the opportunity to prevent the crime. (*Clark*, *supra*, 63 Cal.4th at p. 619.) According to *Clark*, "[i]n *Tison*, the high court stressed the importance of presence to culpability." (*Ibid*.) Presence at the location of the killing provides an opportunity to act as a restraining influence. (*Ibid*.) Here, the surveillance video clearly places defendants at the scene, and they do not dispute that they were present during the robbery. They thus were "aware of and willingly involved in the violent manner in which the particular offense [was] committed . . . ." (See *Banks*, *supra*, 61 Cal.4th at pp. 801, 803, fn. 5.) In response, defendants argue the shooting was an unforeseeable surprise and did not allow defendants to act as restraining influences on the shooter. But in so arguing, defendants focus on an extremely narrow moment in time immediately prior to the shooting. While approaching the vehicle, defendants and Glass observed the public nature of the vehicle—i.e., near the hotel swimming pool where various potential witnesses were present. But they continued with their planned robbery. More importantly, Poblete failed to fully comply when defendants ordered him to raise his hands.[9] Instead, Poblete only raised one hand, indicating to defendants that he may have been hiding something in his other hand. And he was: a gun. But despite his refusal to raise both

---

[9] Defendants question Glass's testimony that they approached the driver's side. However, L.V. testified at least two individuals approached the driver's side door while one or two individuals accosted her. Accordingly, the jury reasonably could have concluded defendants were on the driver's side.

hands, defendants continued with the planned robbery. And defendants either physically engaged with Poblete by pulling him out of the vehicle or Poblete unilaterally decided to exit the vehicle—both of which suggest the robbery was not progressing as anticipated. But defendants did not flee or alter their plans until after the shooting occurred.

Nor did defendants make any effort to assist the victim following the shooting. (See *Tison, supra*, 481 U.S. at p. 141 [noting the Tison brothers' failure to make an effort to help the victims].) While defendants raise a host of reasons to justify their immediate flight, it is undisputed neither Mason nor Bradley attempted to render any degree of aid following the shooting. Moreover, Mason committed an assault on an individual who attempted to halt his flight, evidencing an ongoing lack of concern for the welfare of others.

The record also does not reflect any effort by defendants to minimize the risk of the robbery. (See *Clark, supra*, 63 Cal.4th at p. 622 ["a defendant's apparent efforts to minimize the risk of violence can be relevant to the reckless indifference to human life analysis"].) Glass testified he and defendants never discussed whether they should bring firearms, whether to keep those firearms unloaded, or how to minimize the likelihood of violence. Furthermore, as noted above, Poblete's truck was parked near a swimming pool where other individuals were present. The jury could reasonably have concluded the public nature of the robbery and presence of others increased the risk of someone being injured. (See *Clark*, at p. 621 [defendant made effort to mitigate risk because "attempted robbery was undertaken after closing time, when most of the employees had left the building"]; *Taylor, supra*, 34 Cal.App.5th at p. 558 ["The evidence showed that Taylor and the other men planned for Davis to quickly grab the money from a lone employee late at night after the liquor store had closed, reducing the risk of violence."];

14

but see *Scoggins*, *supra*, 9 Cal.5th at p. 683 [mitigated risk of violence by having confrontation "in a public parking lot during the daytime, when the possible presence of witnesses might reasonably be thought to keep his accomplices within the bounds of the plan"].)

Undoubtedly, there are some factors that do not evidence a reckless indifference to human life. For example, "[t]he duration of the interaction between victims and perpetrators is . . . one consideration in assessing whether a defendant was recklessly indifferent to human life." (*Clark*, *supra*, 63 Cal.4th at p. 620.) The evidence reflects defendants were on the hotel property, and engaged with the victims, for a short period of time. Thus, the duration of the robbery does not suggest defendants acted with reckless indifference. Similarly, nothing in the record indicates defendants were aware of an accomplice's likelihood of killing. (*Id.* at p. 621.)

We find this case analogous to *People v. Bascomb*, *supra*, 55 Cal.App.5th 1077. There, Bascomb and his cohort forced their way into an apartment at gunpoint. (*Id.* at p. 1081.) Bascomb held one individual at gunpoint for a few minutes while the cohort entered a bedroom, briefly struggled with the occupant, and shot him. (*Ibid.*) They then fled following the shooting. (*Ibid.*) In assessing whether Bascomb acted with reckless indifference, the court noted: "Bascomb was willingly involved in the violent manner in which the robbery took place. . . . Bascomb didn't just watch without intervening as his accomplice accosted the murder victim in his bedroom, he used his weapon to keep the other victims at bay and thereby actively enabled the murder. Nor did he help the victim once he had been shot, but instead fled. We agree with the People that this sort of conduct easily meets our state's standard for what constitutes being a major

15

participant who acted with reckless indifference to human life." (*Id.* at p. 1089.)

The court also emphasized the importance of a defendant being an active participant who wielded a firearm: "As we said in *People v. Law*, 'we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard' of culpability required to support a felony murder conviction. (*People v. Law* (2020) 48 Cal.App.5th 811, 825, review granted July 8, 2020, S262490.) The defendants who have shown their culpability was too slight under *Banks* and *Clark* 'are those who were not wielding guns themselves and also not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only).' ([*Law*, at p. 825]; see also, e.g., *In re Miller*[, *supra*,] 14 Cal.App.5th [at p.] 965 [defendant played the role of 'spotter' who would select the robbery target and was not at the scene of the robbery/murder]; *In re Bennett*, *supra*, 26 Cal.App.5th at p. 1019 [defendant was involved in planning the robbery but was not at the scene of the murder]; [*Taylor*, *supra*,] 34 Cal.App.5th [at p.] 559 [the defendant acted as getaway driver and was not at the scene of the murder].)" (*People v. Bascomb*, *supra*, 55 Cal.App.5th at p. 1090; accord *In re Ramirez* (2019) 32 Cal.App.5th 384, 390 (*Ramirez*) [petitioner was waiting across the street with an accomplice's bicycle and was not at the scene of the murder].)

Defendants fail to identify a single case in which a defendant actively participated in a robbery, wielded a firearm during that robbery, and was present for the shooting, but an appellate court found insufficient evidence to support a finding that the defendant acted with reckless indifference for human life. Nor are we aware of any. In considering the *Clark* factors,

16

defendants' culpability is greater than that set forth in those cases on which they rely, namely *Banks*, *Clark*, *Scoggins*, *Taylor*, *In re Bennett*, and *Ramirez*. We conclude the evidence relevant to the *Clark* factors, when considered in total, sufficiently supports the judgment.

## B. Lesser Included Offenses

Defendants assert the trial court erred by failing to instruct on robbery as a lesser included offense to felony murder. We disagree.[10]

### 1. Relevant Background

Prior to trial, defendant Bradley filed a motion in limine requesting the jury be instructed on robbery and attempted robbery as lesser included offenses of felony murder. Bradley argued the jury may plausibly find that he committed robbery but not find him liable for Poblete's death. The prosecutor objected to the instruction.

The court ultimately declined to give the lesser included instruction. The court explained, historically, attempted robbery was not a lesser included offense to murder, and it was unaware of any authority altering that analysis. While it questioned the fairness of the situation, the court ultimately concluded the district attorney is "the charging body" and "consciously chose to withdraw those charges," and it would "honor [the prosecutor's] objection."

### 2. Analysis

Senate Bill 1437 modified the prior rule that " 'a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state.' " (*People v. Cooper*, *supra*, 54 Cal.App.5th at p. 113,

---

[10] We independently review whether the trial court failed to instruct on a lesser included offense. (*People v. Verdugo* (2010) 50 Cal.4th 263, 293.)

17

rev. granted.) The statutory scheme was amended such that " ' "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)' " (*Ibid.*) Rather, the defendant must have been "the actual killer," "have an intent to kill," or " 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' (§ 189, subd. (e)(3).)" (*Ibid.*)

Based on these statutory changes, defendants argue their guilt in an attempted robbery and resulting killing does not automatically make them guilty of felony murder. Rather, the prosecution must also establish, in this instance, the defendants were "major participant[s] in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) Because the attempted robbery and death alone cannot support a felony-murder conviction, defendants argue attempted robbery must be a lesser included offense.

Two tests are used to determine "whether a crime is a lesser included offense of a greater offense: the elements test and the accusatory pleading test. [Citation.] Either of these tests triggers the trial court's duty to instruct on lesser included offenses." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197.) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.) We address each test in turn.[11]

_____

[11] Defendant Mason argues the court has a duty to instruct on relevant principles of law if supported by the evidence. But this position misstates the law. "A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence

We are unaware of any authority suggesting the elements test would trigger a duty to instruct on robbery based on a felony-murder charge. First degree felony murder, as set forth in section 189, identifies various predicate offenses including "arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 287, 288, or 289, or former Section 288a, or murder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death . . . ." (§ 189, subd. (a).) Because robbery is only one of multiple predicate offenses, it does not satisfy the requirement "that the greater"—i.e., felony murder—"cannot be committed without also committing the lesser"—i.e., robbery. (See *People v. Birks*, *supra*, 19 Cal.4th at p. 117.) Felony murder could be committed, for example, based on arson or kidnapping.

Nor does the accusatory pleading test, in this instance, trigger the duty to instruct. The amended information alleges defendants "did commit a felony namely: MURDER, a violation of Section 187[, subdivision] (a) of the Penal Code . . . in that said defendants did unlawfully, and with malice aforethought murder ROBBY POBLETE, a human being." Nowhere in the information is robbery mentioned. While robbery undoubtedly constituted the predicate offense for the felony-murder charge, the California Supreme Court has repeatedly held that courts should not look beyond the actual pleading and its allegations regarding the purported greater offense when applying the accusatory pleading test to determine whether one offense is

---

the defendant is guilty only of the lesser.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 403.) But we need not address the evidence if the lesser offense is not "necessarily included" in the charged offense. And, to make that assessment, we look to the elements test and the accusatory pleading test. (See *People v. Gonzalez, supra*, 5 Cal.5th at p. 197.)

necessarily included in another. (See, e.g., *People v. Banks* (2014) 59 Cal.4th 1113, 1160 ["When applying the accusatory pleading test, '[t]he trial court need only examine the accusatory pleading.' "], overruled in part by *People v. Scott* (2015) 61 Cal.4th 363, 391; *People v. Smith* (2013) 57 Cal.4th 232, 244; *People v. Montoya* (2004) 33 Cal.4th 1031, 1036 ["Consistent with the primary function of the accusatory pleading test—to determine whether a defendant is entitled to instruction on a lesser uncharged offense—we consider *only* the pleading for the greater offense."].)

Defendants contend following the accusatory pleading test, without more, would allow the district attorney to artfully plead around what would otherwise constitute lesser included offenses for felony murder. We agree that is a possibility. However, the California Supreme Court recognized the right of prosecutors to craft pleadings to avoid lesser included offenses, albeit in another context. In *People v. Smith*, *supra*, 57 Cal.4th 232 (*Smith*), the court addressed in part whether resisting a public officer under section 148, subdivision (a)(1) was a lesser included offense to resisting an executive officer in the performance of his duties under section 69. (*Smith*, at p. 236.) The court first concluded the section 148 violation was not a lesser included offense under the statutory elements test because section 69 could be violated in two ways, only one of which overlapped with section 148. (*Smith*, at p. 241.)

In addressing the accusatory pleading test, the Supreme Court explained: "If the accusatory pleading in the present case had charged only the first way of violating section 69 . . . [,] section 148[, subdivision] (a)(1) would not have been a necessarily included offense. But the amended information charged defendant with both ways of violating section 69." (*Smith*, *supra*, 57 Cal.4th at p. 242.) In concluding section 148 was a lesser

20

included offense based on the information as drafted, the court acknowledged the ability of prosecutors to draft pleadings in a manner that would exclude certain lesser offenses: "The prosecution may, of course, choose to file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense." (*Smith*, at p. 244.)

Similarly, in *People v. Munoz* (2019) 31 Cal.App.5th 143 (*Munoz*), the defendant argued gross vehicular manslaughter while intoxicated should be considered a lesser included offense of murder under the accusatory pleading test. (*Id.* at p. 155.) Although the pleading merely repeated the statutory definition of murder and did not set forth the additional requirement for gross vehicular manslaughter while intoxicated, the defendant asserted driving under the influence of alcohol was indisputably the basis for the murder charge. (*Ibid.*) The court agreed driving while intoxicated was a necessary component of the murder charge, but rejected the defendant's argument: "We do not disagree that, based on the preliminary hearing and jury instructions, the prosecution could not secure a murder conviction under the circumstances of this case without proving beyond a reasonable doubt that Munoz drove while intoxicated. The Supreme Court has indicated repeatedly, however, that when applying the accusatory pleading test to determine whether one offense is necessarily included in another, courts do not look to evidence beyond the actual pleading and its allegations regarding the purported greater offense." (*Id.* at pp. 155–156.)

*Munoz* further emphasized the need to restrict the accusatory pleading test to only those allegations in the relevant pleading: "The Supreme Court has explained the importance of limiting analysis of lesser included offenses to the statutory elements and language of the accusatory pleading to 'promote[ ] consistency in application' and 'ease[ ] the burden on both the trial

21

courts and the reviewing courts.' " (*Munoz, supra*, 31 Cal.App.5th at p. 156.) *Munoz* rejected application of an "expanded" accusatory pleading test as contrary to Supreme Court precedent. (*Id.* at p. 158.)

Here, there are multiple predicate offenses that can form the basis for felony murder, and "[a]n information or indictment need not specify the theory of murder on which the prosecution will rely." (*People v. Gurule* (2002) 28 Cal.4th 557, 629; accord *Smith, supra*, 57 Cal.4th at p. 244 [district attorney may "file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense"].) Accordingly, robbery is not a lesser included offense under the accusatory pleading test when the information does not set forth the predicate offense for the felony-murder allegation. The trial court did not err in declining to give the requested instruction on robbery as a lesser included offense.[12]

### III.  DISPOSITION

The judgment is affirmed.

---

[12] Because we conclude the trial court did not err in declining to instruct on robbery as a lesser included offense, we need not address defendants' arguments that the error was prejudicial.

MARGULIES, ACTING P. J.

WE CONCUR:

BANKE, J.

SANCHEZ, J.

A159105, A159107
*People v. Bradley & Mason*

23

Trial Court:        Superior Court of Solano County

Trial Judge:        Robert Bowers, Judge

Counsel:

J. Courtney Shevelson, under appointment by the Court of Appeal, for Defendant and Appellant Willie Eugene Bradley, IV.

Neil Rosenbaum, under appointment by the Court of Appeal, for Defendant and Appellant Melvin Delarence Mason.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Catherine A. Rivlin and Basil R. Williams, Deputy Attorneys General for Plaintiff and Respondent.